David T. BARD, Commissioner of Banking and Insurance of the State of Vermont, and/or his Successor in Office, as Liquidator/Receiver for Ambassador Insurance Company, Inc., Petitioner,

v.

CHARLES R. MYERS INSURANCE AGENCY, INC. and Charles R. Myers, Individually and as President of Charles R. Myers Insurance Agency, Inc., Respondents.

No. D–1364.

Supreme Court of Texas.

Oct. 14, 1992.

---

Robert M. Smith, San Antonio, Susan Z. Haller, Washington, D.C., Charles Herring, Jr., Austin, Richard B. Whitney, Cleveland, Ohio, J. Camille Glasscock, San Antonio, for petitioner.

Laura Cavaretta, Gilbert Lang Mathews, G. Thomas Coghlan, San Antonio, for respondents.

1. 8 Vt.Stat.Ann. § 3600 (1984) (repealed 1991): "The commissioner (of insurance) shall be appointed receiver to wind up the affairs of any delinquent domestic insurer doing busi-

OPINION

COOK, Justice.

The case presents the question whether the Texas trial court below was required to give full faith and credit to an order issued by a Vermont receivership court. We hold that the court was required to honor the Vermont order. Therefore, we reverse the judgment of the court of appeals, 811 S.W.2d 251, and remand the cause to the trial court with orders to dismiss respondents' counterclaim without prejudice to their rights in Vermont.

### I.

Ambassador Insurance Company ("Ambassador") was a specialized company, chartered in Vermont in 1965. Ambassador wrote excess policies for high risk ventures. Charles R. Myers, a Texas resident, through the Charles R. Myers Insurance Agency, Inc. (collectively, "Myers"), wrote and sold Ambassador's policies to his customers. Pursuant to this arrangement, Myers entered a correspondent's agreement with Ambassador that defined each party's rights and obligations.

In November of 1983, the Washington County, Vermont Superior Court ("Vermont receivership court") ordered that Ambassador be placed in receivership under Vermont law. The Vermont receivership court appointed David T. Bard, Commissioner of Banking and Insurance for the State of Vermont, as receiver for Ambassador for the purpose of an attempted rehabilitation of the insurer.[1] The court's order contained an injunction prohibiting the prosecution of any action against Ambassador that would interfere with the Commissioner's conduct of the affairs of Ambassador.

After determining that Ambassador's insolvency could not be rehabilitated, the Commissioner concluded that the insurer

ness in more than one state and shall be vested with title to all of the assets of any such insurer against which delinquency proceedings have been commenced."

had to be liquidated. The Commissioner filed an application for Ambassador's liquidation on March 30, 1984, in the Vermont receivership court. The Vermont receivership court agreed with the Commissioner's findings and issued an order on September 4, 1984, directing the Commissioner to liquidate Ambassador.

The Commissioner, pursuant to his duty to marshal the assets of Ambassador's estate, filed this action in Texas court in July 1985. The action sought to recover certain monies which the Commissioner alleged were owed to the estate for insurance policy premiums not paid by Myers to Ambassador under the terms of the correspondent's agreement. In May 1986, Myers filed an answer in which he raised defenses to the Commissioner's claim. In addition, Myers filed a counterclaim alleging that Ambassador's pre-receivership management had conspired with one of his competitors to prevent Myers from placing certain insurance risks with Ambassador.

In August 1986, the Vermont Supreme Court affirmed the Vermont receivership court's judgment that Ambassador had to be liquidated. *In re Ambassador Ins. Co.,* 147 Vt. 344, 515 A.2d 1074 (1986). Subsequent to that decision, the Commissioner submitted a revised proposed order for the liquidation of Ambassador to the Vermont receivership court. Notice of the proposed liquidation order was given to interested parties, such as Myers and other agents. After a hearing and opportunity for interested parties to comment on the proposed

liquidation order, the court rendered its final liquidation order on March 10, 1987.

Ambassador's former management appealed the liquidation order to the Vermont Supreme Court, alleging that the order was void because of inadequate notice to certain claimants. The Vermont Supreme Court held that the former management was without standing to raise that issue. *In re Ambassador Ins. Co.,* 153 Vt. 417, 571 A.2d 54, 62–63 (1989).

In its final liquidation order the Vermont receivership court appointed the Commissioner as liquidator of Ambassador and charged him with marshalling Ambassador's assets and paying claims. Paragraph 35 of the liquidation order provides:

*Injunction As To Suits Against The Liquidator.* No action at law or equity shall be brought against Ambassador or the Liquidator, or any employee, agent or representative of the Liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further presented after issuance of this Order, *nor shall any counterclaim or set off be asserted in any action brought by or on behalf of the Liquidator, whether in this state or elsewhere,* except in the manner permitted by Paragraphs (13) through (19), and (21) through (23) hereof [relating to procedures for asserting claims in liquidation and to distributions of assets]. (emphasis added).[2]

2. The relevant paragraphs of the order governing Myers' rights regarding his counterclaims are as follows:

(13) *Notice of Order.* The Liquidator shall give or cause to be given notice of the entry of this Order as soon as possible:
(a) by first class mail ... to all persons known or reasonably expected to have claims against Ambassador ...;

(d) by first class mail to producers and all insurance agents of Ambassador....

(14) *Claims in Liquidation.*
(a) The notice served under Paragraph (13)(a) shall require that any person seeking to receive distributions in liquidation as a claimant file with the Liquidator a claim ...

together with proper proof of loss ... on or before March 1, 1988....

(19) *Procedures For Disputed Claims.*
(a) For purposes of Paragraphs (19) and (20) hereof, the word "claim" is defined to include claims made directly against Ambassador or its estate ...;
(b) When a claim is denied in whole or in part by the Liquidator, written notice of that determination shall be given to the claimant or his attorney.... Within 60 days from the mailing of the notice, the claimant must file his objections, if any with the Liquidator....;
(c) Whenever objections are filed with the Liquidator and the Liquidator does not alter his denial of the claim as a result of the objections, the Liquidator shall notify the claimant. The claimant may then ask the Liquidator for Court review of the dispute by

The Commissioner filed a motion for summary judgment on Myers' counterclaim, attaching a copy of the liquidation order rendered by the Vermont receivership court. The Commissioner argued that the district court should give full faith and credit to the liquidation order's injunction against suits, as required by Article IV, section 1, of the United States Constitution. Alternatively, the Commissioner argued that the court should give effect to the order under principles of comity. Under both theories, the Commissioner argued, Myers' counterclaim was barred by the injunction. The trial court refused to dismiss Myers' counterclaim.[3]

The jury returned a verdict in the amount of $28,000 for the Commissioner on the claim against Myers. The jury also returned a verdict against the Commissioner on Myers' counterclaim in the amount of $382,447.90 in compensatory damages, $50,500 in attorney's fees, and $1.2 million in punitive damages. The trial court rendered judgment ordering that the Commissioner take nothing on his claim and that Myers recover the amounts awarded by the jury, after reducing the attorney's fees to $12,500.

The court of appeals affirmed the trial court's judgment. The court of appeals determined that the Vermont injunctions were not entitled to full faith and credit and also need not be enforced under principles of comity.

## II.

■ Article IV, Section 1 of the United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1; *see Barber v. Barber,* 323 U.S. 77, 79, 65 S.Ct. 137, 138, 89 L.Ed. 82 (1944). A properly proven foreign judgment must be recognized and given effect coextensive with that to which it is entitled in the rendering state. *See Barber,* 323 U.S. at 79, 65 S.Ct. at 138; *State of Washington v. Williams,* 584 S.W.2d 260, 261 (Tex.1979). The full faith and credit clause requires that a valid judgment from one state be enforced in other states regardless of the laws or public policy of the other states. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 714, 102 S.Ct. 1357, 1371, 71 L.Ed.2d 558 (1982); *Rich v. Con–Stan Indus.,* 449 S.W.2d 323, 327 (Tex.Civ.App.—Tyler 1969, no writ). Full faith and credit is not required, however, when a decree is interlocutory or subject to modification under the law of the rendering state. *Barber,* 323 U.S. at 81, 65 S.Ct. at 139; *Williams,* 584 S.W.2d at 261; *Cutler v. Cutler,* 543 S.W.2d 1 (Tex.Civ.App.— Dallas 1976, writ ref'd n.r.e.).

Because the 1983 order and the final liquidation order provided that the Vermont receivership court would retain jurisdiction to allow continued supervision over the administration of the Ambassador estate, the court of appeals held that the orders lacked finality and, therefore, were not entitled to full faith and credit. We disagree.

■ The fact that some parts of an order may be subject to modification does not affect the finality of other parts of the same order. *See Williams,* 584 S.W.2d at 262. In *Williams,* the Washington court's retention of jurisdiction did not affect the finality of the provisions of the judgment at issue. Therefore, this court held that the Washington judgment was entitled to full faith and credit despite the fact that certain provisions of the judgment not at issue were subject to modification. *Id.*

---

serving the Liquidator with a written request for such review.... The Liquidator thereupon shall ask this Court for a hearing and give notice of the hearing by first class mail to the claimant or his attorney and to any other persons directly affected.... The matter shall be heard by this Court or *referred to a Court-appointed master....* (emphasis added).

**3.** On February 25, 1988 (before trial in Texas in this case), Myers filed proof of his claim in the Vermont liquidation proceedings, pursuant to Paragraph 14 of the liquidation order, note 2 *supra,* by attaching a copy of his counterclaim filed in Texas court.

■ In the final liquidation order, the Vermont receivership court retained jurisdiction to discharge the receiver or to make further orders relating to the disbursement of Ambassador's assets when the liquidation had been completed; to reopen the liquidation proceedings after they have terminated if additional assets are discovered or for a similar compelling reason; and to effectuate and enforce the order. This continuing jurisdiction is no more than is necessary to enable the receivership court to oversee the conduct of the liquidation of the estate, as is its statutory duty. *See* 8 Vt.Stat.Ann. § 3601 (1990) (repealed 1991).[4] The liquidation of an insurance company can, and usually does, take many years. Therefore, such retention of jurisdiction—and the right to modify or add to the terms of a liquidation order in the face of unforeseen developments—is required. *See Moody v. State*, 520 S.W.2d 452, 457 (Tex. Civ.App.—Austin 1975), *writ ref'd n.r.e.*, 547 S.W.2d 958 (Tex.1977). There is no indication anywhere in the liquidation order that the injunction against bringing or prosecuting suits was subject to modification. Indeed, the intent of the Vermont receivership court is clear—claims were to be brought against the estate according to the procedures set out in the liquidation order and in no other way. The type of injunction entered by the Vermont court is fundamental in assuring that this single procedure is maintained.

Moreover, in concluding that the Vermont receivership court's orders were not "final," the court of appeals made no effort to determine the effect that would be given to the Vermont order under Vermont law. A judgment rendered by a sister state is entitled to the same recognition and credit in this state as it would receive in the state where rendered. *Starzl v. Starzl*, 686 S.W.2d 203, 205 (Tex.App.—Dallas 1984, no writ). The validity of the judgment is determined by the laws of the state where it was rendered. *Baumgardner v. Southern Pacific Co.*, 177 S.W.2d 317, 319 (Tex.Civ. App.—El Paso 1943, no writ). Here, the March 1987 liquidation order rendered by the Vermont receivership court was considered final by the Vermont Supreme Court, which accepted jurisdiction of an appeal from that order. *See In re Ambassador Ins. Co.*, 571 A.2d 54. Because the liquidation order was treated as a final, enforceable order in Vermont, that order, including its injunction against suits, must be given full faith and credit by the Texas courts.

Injunctions against suits in other states that may interfere with the receivership process have been afforded full faith and credit by the United States Supreme Court. *Underwriters Nat'l Assurance Co.*, 455 U.S. 691, 102 S.Ct. 1357 (ordering North Carolina court to grant full faith and credit to injunction against bringing or prosecuting suits entered by Indiana receivership court). Other states have similarly granted full faith and credit to injunctions entered by sister states prohibiting suits that may interfere with the receivership process. *See, e.g., Brown v. Link Belt Div. of FMC Corp.*, 666 F.2d 110 (5th Cir.1982) (Louisiana federal court upheld injunction by Illinois receivership court); *State ex rel. Low v. Imperial Ins. Co.*, 140 Ariz. 426, 682 P.2d 431, 439 (Ariz.Ct.App.1984) (injunction by California receivership court); *Integrity Ins. Co. v. Martin*, 105 Nev. 16, 769 P.2d 69, 70 (1989) (injunction by New Jersey receivership court); *Nasef v. U & I Invs., Inc.*, 91 Or.App. 344, 755 P.2d 136, 138 (1988) (injunction by Indiana receivership court). We likewise grant full faith and credit to the order of the Vermont receivership court.

### III.

■ The court of appeals implies that the Commissioner necessarily exposed Ambassador and himself to a countersuit in Texas by bringing Ambassador's claim to recover premiums in the Texas courts. The court held that the Vermont injunctions could not bar the assertion of a compulsory counterclaim by a claimant sued by

---

4. In 1991, Vermont repealed its former laws governing the supervision, rehabilitation, and liquidation of insurers and enacted new legisla-

tion. *See* 8 Vt.Stat.Ann. §§ 3591–3603, 7031–7100 (Supp.1991). The new statutes do not apply to this case.

the receiver in a Texas court. We disagree.

The fact that the Commissioner initiated suit against Myers in Texas does not affect the enforcement of the Vermont receivership court's injunction in Texas. *See Superintendent of Ins. v. Baker & Hostetler*, 668 F.Supp. 1057, 1061 (N.D.Ohio 1986), *aff'd*, 826 F.2d 1065 (6th Cir.1987) (when New York receiver brought suit in Ohio to marshall assets of estate of insolvent New York insurance company, Ohio defendant's counterclaim was barred by the receivership court's injunction under full faith and credit). Receivers are often required to bring suit outside of the domiciliary state to collect assets of the estate alleged to be in the hands of out-of-state citizens. This affords a benefit to those foreign citizens, like Myers here, who should not necessarily be required to defend themselves in Vermont simply because the receivership proceedings are pending in that state. To hold that a receiver, by going into a foreign court to collect sums alleged to be due the estate, thereby opens the estate to suits in those foreign jurisdictions would defeat the goal of state insurance insolvency statutes and would greatly increase the expense and complexity of insurance insolvency proceedings.

Both Vermont law and the March 10, 1987 Liquidation Order contain provisions which allow claimants outside Vermont to prove their claims before a Special Master, appointed by the Vermont receivership court, in the state of their domicile.[5] *See* 8 VT.STAT.ANN. § 3592 (repealed 1991); note 2 *supra*. On April 3, 1990, the Vermont receivership court appointed a Special Master in Texas to hear the claims of Texas residents against Ambassador's estate.

Myers filed his claim in Vermont in accordance with the requirements of the liquidation order. Therefore, our dismissal of the counterclaim does not prevent Myers from presenting claims to the Special Master in accordance with the liquidation order.

The court of appeals mischaracterizes the compulsory counterclaim rule. The rule does not confer a right to bring a counterclaim, which was deprived by the injunctions. Instead, it is a rule of procedure, designed to avoid piecemeal or duplicative litigation. Its purpose is to provide that a potential counterclaimant with a justiciable interest arising out of the same transaction or occurrence at issue in the opposing party's claim bring the counterclaim in the same proceeding or it will be deemed waived. TEX.R.CIV.P. 97. The "compelling interest" underlying the compulsory counterclaim rule is solely in judicial economy; its purpose is to prevent multiple suits arising out of the same transactions or occurrences. *See Latham v. Allison*, 560 S.W.2d 481, 485 (Tex.Civ. App.—Fort Worth 1977, writ ref'd n.r.e.); *Carter v. Walton*, 469 S.W.2d 462, 467 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); *Western Inn Corp. v. Heyl*, 452 S.W.2d 752, 762 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

The court of appeals failed to recognize that the Vermont injunction served the same interest in judicial economy unique to this type of case by joining all of an insolvent insurer's claimants in a single receivership. Texas has recognized the importance of this interest in article 21.28, section 4(b) of the Insurance Code.[6] This procedure assures the equal treatment of all policyholders, claimants and creditors in insurance company liquidations. In authoriz-

---

**5.** By contrast, Texas apparently makes no similar concession for out-of-state claimants against insolvent Texas insurers. Texas requires all claims be proved in the Texas court in which the receivership proceedings are pending. TEX. INS.CODE ANN. art. 21.28 § 3(h) (Vernon Supp. 1992).

**6.** Article 21.28, section 4(b) of the Insurance Code provides:

(b) Other Orders. Such court may at any time during a proceeding under this Article issue such injunctions or orders as may be deemed necessary to prevent interference with the receiver or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments, garnishments, or other liens, or the making of any levy against the insurer or against its assets or any part thereof.

TEX.INS.CODE ANN. art. 21.28, § 4(b).

ing a receivership court to enter an injunction barring suits from being brought or maintained elsewhere, the Legislature recognized the benefit, if not the practical necessity, of requiring that all claims against the insolvent insurer's estate be adjudicated in the receivership proceedings to ensure the fair and consistent treatment of *all* claims.

The issue here is not *whether* Myers would be entitled to enforce a counterclaim for alleged violations of Texas law. The issue is only *where* that claim should be asserted. The Vermont liquidation order provides Myers with an opportunity to present his claims to the Special Master. Texas public policy, as shown by the enactment of article 21.28, section 4(b), also requires that the claim be asserted in the receivership proceeding. The interest Texas has in permitting redress of violations of Texas law is not affected by according full faith and credit to the Vermont orders.

For the aforementioned reasons, we hold that the Vermont receivership court's injunction was entitled to full faith and credit in Texas courts. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court with orders to dismiss Myers' counterclaim without prejudice to his rights in Vermont.